USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/24/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

             :

Anthony Salerno,           :

             :     **OPINION & ORDER**

       Plaintiff,     :

             :

    -against-       :     19-cv-00627 (KHP)

             :

Nancy A. Berryhill, Acting Commissioner of  :

the Social Security Administration.    :

             :

       Defendant.    :

             :

---------------------------------------------------------------X

       Plaintiff Anthony Salerno, represented by counsel, commenced this action against

Defendant Commissioner of the Social Security Administration (the "Commissioner"), pursuant

to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking

review of the Commissioner's decision finding that he was not disabled under Sections 216(i)

and 223(d) of the Act from April 9, 2015, Plaintiff's alleged disability onset date ("AOD"),

through March 6, 2018, the date of the Commissioner's decision.

       The parties submitted a joint stipulation in lieu of cross-motions for judgment on the

pleadings (the "Joint Stipulation") pursuant to this Court's order. Plaintiff appeals the

administrative law judge's ("ALJ") decision concerning whether (1) the ALJ erred in finding that

Plaintiff's conditions do not meet or medically equal an impairment listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (the "Listings"); (2) whether the ALJ properly weighed the opinions of

Plaintiff's treating physicians and sources; (3) whether the ALJ properly calculated Plaintiff's

residual functional capacity ("RFC"), and (4) whether the ALJ correctly applied the Medical-

Vocational Guidelines ("Grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2, and properly relied on the vocational expert's testimony. For the reasons set forth below, the Commissioner's motion is GRANTED, and Plaintiff's motion is DENIED.

## I. *Procedural History*

Plaintiff was born on July 4, 1967 and currently is 52 years old. He has a high school education. He testified that he worked in New York City's Department of Environmental Protection as a construction worker and was involved in water system and sewer repair. He has not worked since April 9, 2015. As of his hearing on December 29, 2017, he lived with his adopted son in a house on Staten Island. Plaintiff had a hernia repair in 2003, gastric bypass surgery in May 2015, and his left hip replaced in September 2015.

He filed his initial claim for disability insurance benefits ("DIB") on November 17, 2015, shortly after his hip replacement surgery and about six months after his gastric bypass surgery. He asserted that conditions involving his left hip, hearing loss, and obesity were disabling. He claimed an alleged onset date of disability on April 9, 2015, the date he last worked. The Commissioner denied Plaintiff's application for benefits on February 2, 2016. Plaintiff contested the denial and filed a request for hearing, which was granted. On December 29, 2017, the Commissioner held a hearing on Plaintiff's claim. Plaintiff appeared before ALJ Andrea Addison. During his hearing, Plaintiff claimed that he was disabled because of hearing loss, a knee condition, carpal tunnel syndrome in both hands, a right elbow condition, and a serious condition with his hip.

Based on the medical records and on Plaintiff's testimony, the ALJ determined Plaintiff's residual functional capacity–the maximal of work Plaintiff could do despite his limitations. The ALJ posed hypotheticals based on that RFC to Larry Takki, a vocational expert ("VE"). The VE testified at the hearing that there were jobs in the national economy for individuals with limitations like those Plaintiff had; namely, a collator/operator, a price marker, and a sub-assembler of electronics. The ALJ found Plaintiff was not disabled for the purposes of Social Security and denied his application for benefits on March 6, 2018. Plaintiff appealed to the Appeals Council and submitted additional evidence from March 20, 2018, outside of the relevant period which ended as of the ALJ's decision. The Appeals Council denied her application on December 21, 2018. The instant case followed.

## II.    The Commissioner's Decision

In rendering her decision, the ALJ first determined that Plaintiff met the insured status requirement for DIB under the Social Security Act through December 31, 2020. She then applied 20 C.F.R. § 404.1520(a)(4)'s five-step sequential process to evaluate Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his AOD, April 9, 2015. At step two, the ALJ concluded that Plaintiff suffered from the following severe impairments:  left hip osteoarthritis status post left hip reconstruction and hearing loss The ALJ also considered Plaintiff's carpal tunnel disorder but found it to be non-medically determinable because of a lack of corroborating test results or examination findings.

At step three, the ALJ found that Plaintiff's impairments, individually and collectively, failed to meet or equal the severity of the impairments in the Listings. The ALJ discussed

Listings 1.02 ("Major dysfunction of a joint(s) (due to any cause)") and 2.10 ("Hearing loss not treated with cochlear implantation"). The ALJ found that Listing 1.02 was not met because "treatment records do not establish that [Plaintiff] has an inability to ambulate effectively," as required by Listing 1.02(a). Tr. 14. In connection with Listing 2.10, the ALJ found that Plaintiff's hearing test results did not meet the Listing thresholds.

At step four, the ALJ assessed Plaintiff's RFC. *See* 20 C.F.R. § 416.945(a)(1). The ALJ found that, through the hearing date, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) subject to certain limitations, including restrictions on certain types of movement such as only occasionally[1] stooping and kneeling and never using left foot controls. Relying on the testimony of the VE, he found that there were jobs, such as collator/operator, price marker, and sub assembler of electronics, that someone with Plaintiff's RFC could perform. Thus, the ALJ held that Plaintiff was not disabled.

## DISCUSSION

### I. Applicable Law

#### A. Judicial Standard of Review of the Commissioner's Decision

A court's review of the Commissioner's denial of disability benefits is limited to two inquiries. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *Dwyer v. Astrue*, 800 F. Supp. 2d 542, 546 (S.D.N.Y. 2011). The court must determine whether the Commissioner applied the correct legal principles in reaching a decision and whether the Commissioner's decision is

---

[1] "Occasionally" and "frequently" are terms of art under Social Security regulations. *See Rivera v. Comm'r of Soc. Sec.*, 394 F. Supp. 3d 486, 496 (S.D.N.Y. 2019) (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)). Occasionally means "very little up to one-third of the time." SSR 83-14. Frequently means "from one-third to two-thirds of the time." *Id.*

supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). If the Commissioner's decision is supported by substantial evidence in the administrative record, the ALJ's findings as to any facts are conclusive. 42 U.S.C. § 405(g) & § 1383(c)(3).

An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure may have affected the disposition of the case. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). This applies to an ALJ's failure to follow an applicable statutory provision, regulation, or Social Security Ruling ("SSR"). *See, e.g.*, *id.* (discussing failure to follow a regulation); *Schaal v. Callahan*, 993 F. Supp. 85, 93 (D. Conn. 1997) (discussing failure to follow SSR). In such a case, the court may remand the matter under sentence four of 42 U.S.C. § 405(g), especially if necessary to allow the ALJ to develop a full and fair record or to explain her reasoning. *See, e.g.*, *Donnelly v. Colvin,* No. 13-CV-7244 AJN RLE, 2015 WL 1499227, at *8 (S.D.N.Y. Mar. 31, 2015); *Rivera ex rel. S.M.H. v. Colvin,* 9 F. Supp. 3d 309, 316 (S.D.N.Y. 2014).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, it must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (citation and internal quotation marks omitted); *Donnelly*, 2015 WL 1499227, at *8. The threshold is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is "more than mere scintilla" and "means—and means only—such relevant evidence as reasonable mind might accept as adequate to support a conclusion." *Id.* (citations and internal quotation marks

omitted); *accord Estrella*, 925 F.3d at 95. Under the substantial evidence standard, a reviewing

court may reject an ALJ's findings of fact "only if a reasonable factfinder would *have to*

*conclude otherwise*." *Brault*, 683 F.3d at 448 (emphasis in original) (citation and internal

quotation marks omitted). This is a "highly deferential standard of review." *Negron v. Berryhill*,

733 F. App'x 1, 2 (2d Cir. 2018) (noting that, where there is more than one rational

interpretation, the Commissioner's decision will stand).

To be supported by substantial evidence, the ALJ's decision must be based on a

consideration of all the evidence available in the record. *See* 42 U.S.C. § 1383(c); *Matta v.*

*Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While the ALJ's decision need not "mention[] every

item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per

curiam), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*,

595 F.3d 402, 410 (2d Cir. 2010) (citation and internal quotation marks omitted), the ALJ may

not ignore or mischaracterize evidence of a person's alleged disability. *See Ericksson v. Comm'r*

*of Soc. Sec.*, 557 F.3d 79, 82–84 (2d Cir. 2009) (discussing mischaracterizing evidence); *Kohler*,

546 F.3d at 268–69 (discussing overlooking evidence); *Ruiz v. Barnhart*, No. 01-cv-1120 (DC),

2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (discussing ignoring evidence). If the decision

applies the correct legal standards and is based on substantial evidence, the reviewing court

must affirm; otherwise, the court may modify or reverse the decision, with or without remand.

42 U.S.C. §§ 405(g) & 1383(c)(3).

### B. *Legal Principles Applicable to the Commissioner's Disability Determination*

Under the Act, every individual considered to have a "disability" is entitled to benefits. 42 U.S.C. §§ 423 & 1382.  The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  A claimant's impairments must be "of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A) & 1382c(a)(3)(B).

To determine whether an individual is entitled to receive disability benefits, the Commissioner is required to conduct the following sequential five-step inquiry:

(1)  Determine whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(i).

(2)  If not gainfully employed, determine whether the claimant has a "severe impairment" that significantly limits his or her ability to perform basic work activities. Under the applicable regulations, an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities is considered "severe."  20 C.F.R. § 416.920(a)(4)(ii).

(3)  If the claimant has a "severe impairment," determine whether the impairment is one of those in the Listings – if it is, the Commissioner will presume the claimant to be disabled.  20 C.F.R. § 416.920(a)(4)(iii).  The Commissioner must also determine the claimant's ability to perform physical and mental work activities on a sustained basis despite his impairments, his RFC.[2]  20 C.F.R. § 416.920(a)(4)(iv).

---

[2] A claimant's RFC is "the most [he] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).  The ALJ's assessment of a claimant's residual functional capacity must be based on all relevant medical and other evidence,

(4) If the claimant does not meet the criteria set forth in the Listings, the Commissioner next must determine whether the claimant possesses the requisite RFC to perform past work. *Id.*

(5) If the claimant is not capable of performing work performed in the past or has no history of past work, the Commissioner must determine whether the claimant can perform other substantial gainful work which exists in the national economy.

*Id.*; 42 U.S.C. § 1382c(a)(3)(B); *see, e.g.*, *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.

1999); *Gonzalez v. Apfel*, 61 F. Supp. 2d 24, 29 (S.D.N.Y. 1999).

The claimant bears the burden of proof at the first four steps of the

Commissioner's inquiry. *See, e.g.*, *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013);

*Gonzalez*, 61 F. Supp. 2d at 29. At the last step, the Commissioner has the burden to

show that "there is other gainful work in the national economy which the claimant could

perform." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998); *see Poupore v. Astrue*, 566

F.3d 303, 306 (2d Cir. 2009).

## II.  *Analysis*

This Court first addresses the ALJ's affirmative duty to develop the record, before

turning to whether the ALJ properly explained why Plaintiff did not meet a Listing. The Court

then addresses whether the ALJ failed to adequately discuss the weight of Plaintiff's treating

physicians, whether the ALJ's RFC finding is supported by substantial evidence, and whether

the ALJ properly relied on the VE's testimony.

---

including objective medical evidence, such as x-rays and MRIs, the opinions of treating and consultative physicians, and statements by the claimant and others concerning the claimant's impairments, symptoms, physical limitations, and difficulty performing daily activities. *See, e.g., Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

### A. Development of the Record

In Social Security proceedings, the ALJ must affirmatively develop the record on behalf of all claimants, including those represented by counsel. *See Moran v. Astrue*, 569 F.3d 108, 112–13 (2d Cir. 2009); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). The ALJ must investigate the facts and develop the arguments for and against granting benefits. *Perez*, 77 F.3d at 47. This is a threshold question. Accordingly, "the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." *Intonato v. Colvin*, No. 13 CIV. 3426 JLC, 2014 WL 3893288, at *8 (S.D.N.Y. Aug. 7, 2014) (*quoting Scott v. Astrue,* No. 09-cv-3999 (KAM)(RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010)). Remand is appropriate when the ALJ fails to discharge this duty. *See, e.g.*, *Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making her decision.").

After careful review of the record, the Court finds that the ALJ properly developed the record by obtaining complete medical records from the Plaintiff's medical providers. *See* 42 U.S.C. § 423(d)(5)(B). The ALJ had medical records covering Plaintiff's impairments, including opinions, progress notes, assessments, and testing results, spanning the time period from 2014 through 2017. Further, Plaintiff points to no existing medical records missing from the administrative record. Though Plaintiff submitted additional records from March 20, 2018, the evidence was not properly before the ALJ, whose decision was dated March 6, 2018. Thus, that evidence is irrelevant to the Court's review of the ALJ's decision.

**B. *Listings***

Plaintiff argues that the ALJ failed to properly explain why Plaintiff did not meet Listings 1.02 ("Major dysfunction of a joint(s) (due to any cause)"), 1.03 ("Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint"), 1.04 ("Disorders of the spine"), and 1.08 ("Soft tissue injury (e.g., burns)").  To support his argument, Plaintiff cites to no law and only to general swathes of the record without indicating which portions support which of Plaintiff's contentions about each Listing.[3]  Notably, Plaintiff only alleged problems with his left hip, hearing loss, and obesity in his initial application.  Thus Listings 1.03, 1.04 and 1.08 were never at issue.  During his hearing, his counsel stated that Plaintiff's conditions met or equaled only Listings 1.02 and 1.08 but did not mention Listings 1.03 or 1.04.  *See* Tr. 41.

Plaintiff bears the burden at step three to show that his impairments meet or exceed all the medical criteria in a Listing.  "An impairment that manifests only some of [the] criteria, no matter how severely, does not qualify."  *Dry v. Berryhill*, No. 17-CV-01254 (ER)(SN), 2018 WL 1027392, at *9 (S.D.N.Y. Jan. 22, 2018) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)), *adopted by*, No. 17CIV1254ERSN, 2018 WL 1033231 (S.D.N.Y. Feb. 20, 2018).  Further, the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months" when not expected to result in death.  20 C.F.R. § 404.1509.  An impairment must be

---

[3] This approach to briefing is extremely sloppy.  Plaintiff's counsel, Meltzer, Fishman, Madigan & Campbell, has previously been admonished for similarly sparse briefing.  *See, e.g.*, *Koehler v. Berryhill*, No. 17CV6075VSBKNF, 2019 WL 967282, at *2 (S.D.N.Y. Feb. 28, 2019) (Plaintiff counsel's "lack of legal rigor is consistent with the Plaintiff's prior submissions"); *Sigmen v. Colvin*, No. CIV.A. 13-0268, 2015 WL 251768, at *11 (E.D.N.Y. Jan. 20, 2015) ("Plaintiff's memorandum falls woefully short of elucidating any of these arguments.").  Plaintiff's counsel is directed to take more care in future court submissions.

supported by medical signs or findings demonstrating its existence.  SSR 96-4p.[4]  An ALJ's

Listings conclusion may be upheld even where there is no explanation so long as other portions

of the decision and other evidence support a finding that the conclusion is supported by

substantial evidence.  *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010);

*Morales v. Colvin,* No. 16-CV-08373 (ALC), 2018 WL 1353282, at *8 (S.D.N.Y. Mar. 15, 2018); *see*

*Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982) (finding that "the absence of an express

rationale does not prevent [the Court] from upholding the ALJ's [Listing] determination" so long

as the conclusion is supported by substantial evidence).

     The ALJ found that Plaintiff "does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in"

the Listings.  Tr. 14.  Though there is no express rationale to support her findings as to Listings

1.03, 1.04, and 1.08, this is not surprising given that Plaintiff never argued that 1.03 and 1.04

applied, and, as explained below, there is no indication that 1.08 was relevant.  In any event,

the Court may affirm the ALJ's decision as to a finding that Listing criteria were not met so long

as it finds that substantial evidence supports her findings.  *See Berry*, 675 F.2d at 469; *see Cruz

v. Astrue*, No. 06 CIV 3670 LTS DCF, 2009 WL 1024242, at *11–12 (S.D.N.Y. Apr. 9, 2009)

(affirming where the ALJ had generally the same explanation of how plaintiff did not meet the

Listings).

     The ALJ specifically addressed Listing 1.02(A), which requires an inability to ambulate

effectively.  The ALJ explained that the "treatment records do not establish that the claimant

_____

[4] SSR 96-4p was rescinded by 83 Fed. Reg. 115 (June 14, 2018).

has an inability to ambulate effectively." Tr. 14. The relevant regulation defines the inability to ambulate effectively as "an extreme limitation of the ability to walk" requiring "insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held assistive device(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00.B.2.b.(1). Examples of ineffective ambulation include "the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation," and the inability to carry out activities such as shopping and banking. The ALJ's decision noted two observations from the record. On October 27, 2015, Dr. Alejandro Gonzalez Della Valle, one of Plaintiff's treating physicians, observed that Plaintiff could "walk very well in clinic," soon after hip surgery in September 2015. On February 15, 2016, consultative examiner ("CE") Dr. Andrew T. Cheng noted that "[Plaintiff] can ambulate well." Tr. 16. These records support the ALJ's finding on Listing 1.02. Other evidence also supports the ALJ's finding, including the lack of evidence indicating that Plaintiff needs or uses an assistive device, and evidence showing that Plaintiff is able to travel independently on public transportation and can walk at least two blocks. Thus, substantial evidence supports a finding that Plaintiff did not meet Listing 1.02(A).

Listing 1.02(B) was not specifically addressed by the ALJ. It requires that Plaintiff be unable to perform fine and gross movements effectively in both upper extremities. 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 1.02.B. Inability to perform fine and gross movements "effectively means an extreme loss of function of both upper extremities." *Id.* at § 1.00.B.2.c. Examples include the inability to prepare a simple meal and the inability to take care of personal hygiene. *Id.* Here, substantial evidence supports the ALJ's finding that this Listing is not met. In a

January 6, 2016 function report, Plaintiff noted that he could perform light housekeeping, feed and care for his dog, generally take care of his personal grooming, and do light cooking daily. Though there is testimonial evidence pointing to some limitation in Plaintiff's hands, there are no medical findings to support the existence of an impairment. *See* SSR 96-4p. Thus, substantial evidence supports the ALJ's finding that Plaintiff does not meet Listing 1.02(B).

Plaintiff asserts that the ALJ erred by not specifically addressing Listing 1.03 (Reconstructive surgery or surgical arthrodesis[5] of a major weight-bearing joint"). However, Listing 1.03, like Listing 1.02(A), requires an inability to ambulate effectively. As previously discussed, substantial evidence supports a finding that Plaintiff has not met his burden to establish that he cannot ambulate effectively. Thus, this Listing is not met.

Plaintiff asserts that the ALJ erred by not specifically discussing Listing 1.04 ("Disorders of the spine"). To meet the listing, there must be an issue with the spine that results "in compromise of a nerve root (including the cauda equina) or the spinal cord." There also must be at least one of three other requirements: a) "[e]vidence of root compression," b) spinal arachnoiditis,[6] or c) lumbar spinal stenosis resulting in pseudoclaudication.[7] While there is imaging of the spine in connection with Plaintiff's hip surgery, *see* Tr. 342, there is no indication anywhere in the record that Plaintiff met the Listing's requirements. Indeed, Plaintiff did not claim a spinal issue. Thus, the ALJ did not err in addressing this Listing, as Plaintiff offers no evidence suggesting he met this Listing's criteria.

---

[5] Arthrodesis is surgical immobilization of a joint by fusion of the adjacent bones.
[6] Arachnoiditis is swelling of a membrane that surrounds the spine.
[7] Lumbar spinal stenosis resulting in pseudoclaudication is a narrowing of the spinal canal in the lower back.

Finally, Plaintiff asserts that his impairments meet or equal Listing 1.08 ("Soft tissue injury (e.g. burns)"), which was also not specifically raised by Plaintiff except in passing or addressed by the ALJ. Listing 1.08 requires "continuing surgical management . . . directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.08. In this appeal, Plaintiff points to: (1) a report from a registered physician's assistant from October 30, 2013, indicating that Plaintiff needed to have an MRI to determine whether surgical intervention was needed for a bicep injury, and (2) a Report fromDr. Igor Rubinshteyn, a workers' compensation examiner, which diagnosed Plaintiff with a "[r]ight forearm sprain/strain." Tr. 309. Plaintiff told Dr. Rubinshteyn that he was not receiving any care for his forearm and taking no medications other than Aleve. The note also states that "[n]o surgery was performed due to the accident [that caused the forearm sprain]." *Id.* Thus, these records do not support a finding that Plaintiff met Listing 1.08. As for Plaintiff's hip joint replacement, hernia repair, and gastric bypass surgery, none appear to have required "continuing surgical management and other associated treatments," such as "post-surgical procedures, surgical complications, infections, or other medical complications, related illnesses, or related treatments." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(M). Thus, Plaintiff has not met his burden of showing he met the criteria of Listing 1.08.

In sum, substantial evidence supports the ALJ's finding that none of Plaintiff's impairments, singly or in combination, met or equaled a Listing.

## C. *Residual Functional Capacity*

14

Plaintiff next contends that the ALJ misapplied the Grids, failed to discuss the weight given to Plaintiff's treating physicians, and that the ALJ's RFC finding was neither supported by the medical evidence nor his testimony.  Again, Plaintiff cites to no law and only to general swathes of the record without differentiating which parts of the record support his various arguments.  Moreover, the only "argument" that Plaintiff makes is that parts of the records "establish a less than sedentary capacity." [8]  Joint Stipulation at 10.  The Court will treat these generalized statements as general challenges to the ALJ's RFC determination, firstly to whether the ALJ properly followed the treating physician rule when formulating the RFC and then to whether the RFC is generally supported by substantial evidence.

### 1. Treating Physician Rule

Plaintiff's contention that the ALJ "failed to discuss the weight of the treating physicians and sources," has no merit.  Tr. 10.  The ALJ discussed the weight given to the opinions of Plaintiff's treating sources, Drs. Huish and Della Valle when determining Plaintiff's RFC.  *See generally* Tr. 16-17.  The Court discusses the treating physician's rule in relation to the opinions of Drs. Huish and Della Valle for context and out of an overabundance of consideration for Plaintiff.

Applicable regulations provide that so long as a treating physician's medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] record," it must be given

---

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567

controlling weight.  20 C.F.R. § 416.927(c)(2); *see* SSR 96-2p[9] (providing guidance regarding the

treating physician rule); *Bliss v. Comm'r of Soc. Sec.*, 406 F. App'x 541, 541–42 (2d Cir. 2011).

However, a treating physician's opinion need not be given controlling weight where other

substantial evidence on the record contradicts it.  *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x

5, 7 (2d Cir. 2017) (citations omitted).  Less weight will be given where the opinion is

inconsistent with the record as a whole.  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).  A

doctor's opinion that a claimant is "disabled" is not given special significance because that

determination is reserved to the Commissioner.  20 C.F.R. § 404.1527(d)(3); *see Micheli v.*

*Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) (finding that a treating physician's statement that

claimant is disabled cannot be determinative).  The Court must defer to the Commissioner

when there are genuine conflicts in the medical record.  *Monroe*, 676 F. App'x at 8 (citing *Veino*

*v. Barnhart*, 312 F.3d 578, 588 (2d Cir.2002).

When not giving controlling weight to a treating physician's medical opinion, the ALJ

must provide good reason.  *See* 20 C.F.R. § 416.927(c)(2); *Estrella*, 925 F.3d at 96.  Under the

precedent of the United States Court of Appeals for the Second Circuit, the ALJ, generally, must

address:  "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of

medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining

medical evidence; and (4) whether the physician is a specialist," when discounting a treating

physician's medical opinion (hereinafter, the "*Burgess* factors").  *Estrella*, 925 F.3d at 96-97

---

[9]  SSR 96-2p was rescinded by 82 Fed. Reg. 57 (Mar. 27, 2017).  This ended the treating physician rule for
applications filed after March 27, 2017.

(alteration in original) (quoting *Selian*, 708 F.3d at 18); *see Burgess v. Astrue*, 537 F.3d 117, 129

(2d Cir. 2008).  An ALJ's failure to address these factors or provide good reason when assigning

less than controlling weight to a treating physician's medical opinion is error and grounds for

remand.  *Estrella,* 925 F.3d. at 96; *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).  A

reviewing court need not remand, however, if "a searching review of the record assures [the

court] that the substance of the treating physician rule was not traversed."  *Estrella*, 925 F.3d at

97 (internal quotation marks omitted) (quoting *Halloran*, 362 F.3d at 33); *Halloran*, 362 F.3d at

31–33 (affirming even where "it is unclear on the face of the ALJ's opinion whether the ALJ

considered (or even was aware of) the applicability of the treating physician rule").

 Here, there are two treating sources, Drs. Steven Huish and Della Valle.  Plaintiff cites to

Dr. Huish's opinion to support his contention that Plaintiff is capable of less than sedentary

work.  Dr. Huish treated Plaintiff as part of a workers' compensation claim for Plaintiff's hip

issues in 2014 and 2015.[10]  There are notes from May 2014 through December 2015.  These

office notes consist of information from Plaintiff, the results of a physical examination, a series

of impressions, and a treatment plan.  The notes from May 2014 through September 2015

indicate worsening issues with Plaintiff's left hip, at which point Plaintiff had hip replacement

surgery.  *See* Tr. 315-326.  As noted above, Plaintiff worked from May 2014 to April 2015, but

---

[10] Dr. Huish also treated Plaintiff in September 2014 for an injury to Plaintiff's elbow and bicep.  Notably, there was no disabling issue found.  Plaintiff took a brief break from work and then returned after two weeks.  There are no indicators from Dr. Huish's 2015 notes that Plaintiff's arm injuries continued to be an impairment in 2015.  In February 2015, Dr. Igor Rubinshteyn also examined Plaintiff's arm and noted that it was working normally.

stopped working about one month before his gastric bypass surgery and five months before his hip surgery. [11]

In April 2015, Dr. Huish recommended that Plaintiff discontinue working and opined that Plaintiff was temporarily totally disabled. Dr. Huish repeated this opinion through September 2015, when Plaintiff had hip replacement surgery. In December 2015, after Plaintiff's hip surgery, it was noted that he had "difficulty sitting, standing, bending, carrying, and lifting." Tr. 501. Dr. Huish's examination found that Plaintiff had a Trendelenburg and antalgic gait, as well as signs pointing to weakness in the hip.[12] Dr. Huish's impressions included status post left total hip replacement, worsening of the left lateral hip pain with gait disorder, and left hip girdle weakness. Dr. Huish prescribed over-the-counter anti-inflammatories. Dr. Huish also opined that Plaintiff "is not able to work in any capacity" and that Plaintiff was "temporarily totally disabled." *Id.* This is the last office note from Dr. Huish. The ALJ assigned little weight Dr. Huish's opinion, explaining that an opinion on whether someone is disabled is reserved to the Commissioner, and as such, Dr. Huish's opinion as to whether Plaintiff was disabled deserved no special significance. The ALJ also discounted Dr. Huish's 2015 opinions because they did not provide a function-by-function assessment of Plaintiff's abilities and limitations.

Dr. Huish also filled out a Physical Capacities Assessment Questionnaire dated September 21, 2017 that indicated that Plaintiff could "perform[] less than sedentary work with

---

[11] The ALJ did not address the notes during this period, presumably because Plaintiff worked during the period and was therefore not disabled. The Plaintiff's AOD was April 9, 2015.
[12] A Trendelenburg gait is an abnormal gait with weakness of the abductor muscles of the hip. An antalgic gait is a gait that develops to avoid pain while walking.

additional manipulative, postural, and environmental limitations." Tr. 16. The Assessment

indicated that Plaintiff could sit for three or four hours during an eight-hour workday with 30

minutes uninterrupted time, could stand/walk up to three hours, do so without interruption for

15-20 minutes, and that these limitations were due to his left hip. Dr. Huish also opined that

Plaintiff could occasionally[13] lift up to ten pounds and could occasionally carry up to five pounds

due to his carpal tunnel syndrome and hip; could not use his hands for pushing, pulling, or fine

manipulation due to his carpal tunnel syndrome; had issues with grasping repeatedly; could not

use his left foot for repetitive  movements; could only occasionally bend and reach above; and

could never squat, crawl, climb, stoop, crouch, or kneel. The ALJ gave this opinion little weight

because the opinion was from 2017, and Dr. Huish not treated Plaintiff since 2015. Tr. 17. The

Court notes that Plaintiff describes Dr. Huish as treating Plaintiff from "May 1, 2014 through

August 2017 and continuing," which is not supported by the record. Joint Stipulation at 6. As

the ALJ correctly noted during Plaintiff's hearing, and as Plaintiff's counsel confirmed, Dr. Huish

last treated Plaintiff in 2015. *See* Tr. 42 (Plaintiff's attorney confirming that Dr. Huish last

treated Plaintiff in 2015). Plaintiff provided no progress notes or information, other than Dr.

Huish's assessment from 2017, that supports the existence of any treating relationship past

2015 or that any 2017 examination supported Dr. Huish's 2017 opinion, which purported to

address Plaintiff's carpal tunnel syndrome. *See, e.g.* Tr. 398-99 (May 1, 2014 Office Note

indicating issues with left hip); Tr. 387 (September 17, 2015 Office Note indicating issues with

left hip).

---

[13] The form identifies "occasionally" as "0% - 33% (1-2 hrs)" of an eight-hour workday.

The ALJ gave great weight to the October 27, 2015 opinion of Dr. Della Valle, Plaintiff's other treating physician. Dr. Della Valle treated Plaintiff from February 2015 through October 2015 and operated on Plaintiff's hip in September 2015. The ALJ stated that the opinion was consistent with the doctor's "physical examination findings and [Plaintiff's] testimony that his left hip pain diminished after he underwent hip replacement surgery." Tr. 16. Dr. Della Valle opined that Plaintiff could not return to "heavy duty construction work with a jackhammer and carrying heavy bags of cement," but that he could return to light duty work with only the restriction that Plaintiff "should avoid climbing stairs and ladders with over 40 pounds." Tr. 376. Dr. Della Valle's opinion relied on the results of a hip examination and x-rays showing "an intact [h]ip reconstruction without any sign of complication." *Id*. After the surgery, the doctor noted that the "[t]he patient walks very well in clinic today." *Id.*

The Court finds that the ALJ gave good reason for the little weight given to Dr. Huish's 2015 opinions. First, the ALJ correctly noted that a doctor's opinion that a claimant is disabled does not deserve any special significance under applicable regulations. *See, e.g.*, 20 C.F.R. § 404.1527(d); SSR 96-05.[14] But the ALJ also did not ignore Dr. Huish's 2015 opinions. SSR 96-05. The ALJ considered them along with the other information on the record. The ALJ discounted the opinions because they were on an issue reserved to the commissioner and because they did not give a function-by-function assessment.[15] These are good reasons to discount the 2015 opinions. Further, all Dr. Huish's 2015 notes concentrated on issues with Plaintiff's left hip,

---

[14] SSR 96-05 was rescinded by 82 Fed. Reg. 57 (Mar. 27, 2017).
[15] The December 3, 2015 note did include that Plaintiff had "difficulty" sitting, standing, bending, carrying, and lifting. However, it did not speak to the degree of impairment, and it is not clear if the difficulty was reported by Plaintiff or adduced from examination or observations. *See* Tr. 501.

issues that resolved with surgery when Dr. Della Valle observed that Plaintiff was ambulating well. Another doctor, Dr. Cheng, also observed Plaintiff was ambulating well in February 2016. Plaintiff likewise testified that his symptoms got better after his surgery. Thus, the ALJ gave good reason to discount Dr. Huish's 2015 opinions, and her weighting was supported by substantial evidence.

The ALJ committed legal error by assigning less than controlling weight to Dr. Huish's September 2017 opinion without explicitly discussing the *Burgess* factors or otherwise giving good reason. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). But, the ALJ's error can be found harmless if, after a searching review of the record, the Court finds that substantial evidence supports the ALJ's findings. *Id.* Here, the Court's searching review of the record assures it that the substance of the treating physician rule was not traversed and that substantial evidence supports the ALJ's weighing of the opinions. *See Negron*, 733 F. App'x at 2 (finding that treating physician rule was not traversed even where ALJ did not explicitly discuss it); *Halloran*, 362 F.3d at 31–33; *see also Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that an ALJ need not "slavish[ly] recit[e] . . . each and every factor where the ALJ's reasoning and adherence to the regulation are clear.").

The ALJ discounted Dr. Huish's 2017 opinion because "evidence of record reflects that Dr. Huish last treated [Plaintiff] on December 3, 2015." Tr. 17. This is not a good reason for discounting the opinion. *See Woodmancy v. Colvin*, 577 F. App'x 72, 75 (2d Cir. 2014) (citing *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir.2003)) (holding that a treating physician's retrospective opinion is still entitled to controlling weight unless contradicted by other medical

evidence or very compelling non-medical evidence).  Nevertheless, the ALJ's error was harmless

because Dr. Huish's 2017 opinion was contradicted by medical and non-medical evidence,

which constitutes substantial evidence supporting the ALJ's decision to not assign controlling

weight to Dr. Huish's 2017 opinion.  *Snell*, 177 F.3d at 133; *Rivera v. Comm'r of Soc. Sec.*, 728 F.

Supp. 2d 297, 327 (S.D.N.Y. 2010) ("ALJ validly rejected . . . [treating] physicians' opinions

because they conflicted with plaintiff's admitted daily activities and other evidence in the

record").  This evidence includes Dr. Della Valle's 2015 opinion that Plaintiff had the functional

ability to return to work with restrictions on "climb[ing] stairs and ladders with over 40

pounds."  Tr. 376.  This directly contradicts Dr. Huish's retrospective opinion from 2017.

Further, Dr. Della Valle's opinion was based on an examination and diagnostic imagining, as

opposed to Dr. Huish's 2017 opinion, which was not based on an examination or diagnostic

imagining.   Additionally, in February 2016, Dr. Cheng observed that Plaintiff could "ambulate

well" and that he was in "good general health with no current medication."  Finally, none of Dr.

Huish's 2015 opinions or findings from when he was treating Plaintiff support the degree of

impairment stated in his 2017 opinion about Plaintiff's limitations.  Also, there are no

indications from any medical record that Plaintiff had any issues with carpal tunnel syndrome

or with his hands generally.  It is not the Court's place to resolve evidentiary conflicts; that is a

task left to the Commissioner.  *See Veino*, 312 F.3d at 588 (2d Cir.2002); *Clark v. Comm'r of Soc.

Sec.*, 143 F.3d 115, 118 (2d Cir.1998); *Carroll*, 705 F.2d at 642.  The ALJ resolved the conflict

between Dr. Huish's 2017 opinion and the other evidence discussed above by discounting Dr.

Huish's 2017 opinion.  Though the ALJ erred by not directly addressing the *Burgess* factors or

otherwise providing good reason to discount Dr. Huish's 2017 opinion, that error is harmless. Substantial evidence is a deferential standard, and here substantial evidence supports the ALJ's decision.  *See Biestek*, 139 S. Ct. at 1154; *Halloran*, 362 F.3d at 33.

### 2. *RFC Determination*

Plaintiff argues that two sets of records establish a less than sedentary RFC.  The first is the previously discussed evidence from Dr. Huish.  The second is Dr. Rubinshteyn's 2015 notes. Plaintiff's argument fails because the ALJ's findings are supported by substantial evidence.

The ALJ's RFC assessment is step four of the five-step analysis.  Thus, the Plaintiff has the burden to prove a more restrictive RFC than the ALJ found.  20 C.F.R. § 404.1520; *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("[Plaintiff] had a duty to prove a more restrictive RFC, and failed to do so.").  The ALJ must weigh all the available evidence available to make an RFC finding consistent with the record as a whole and may resolve disputes between conflicting evidence.  *Matta*, 508 F. App'x at 56; *cf. Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir. 2019) (noting that an ALJ may not "substitute his own expertise or view of the medical proof for the treating physician's opinion, [though] the ALJ may choose between properly submitted medical opinions.") (internal citations and quotation marks omitted). The ALJ's determination need not completely adopt any single medical opinion.  *Matta*, 508 F. App'x at 56 (holding that the ALJ's RFC assessment need "not perfectly correspond with any of the opinions of medical sources" so long as it is "consistent with the record as a whole.").  In making an RFC finding, an ALJ need not cite to any specific evidence or lack thereof so long as the requirements for the RFC finding are is reasonably inferable from substantial evidence.  *See Trepanier v. Comm'r of*

*Soc. Sec. Admin.,* 752 F. App'x 75, 79 (2d Cir. 2018) (holding the ALJ did not err where the ability to meet an exertional requirement is inferable from other substantial evidence). And, because Plaintiff bears the burden, a lack of supporting evidence can constitute substantial evidence, especially when coupled with inconsistent evidence. *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015).

Here, the ALJ found that Plaintiff had the capacity to do light work with some restrictions. To be capable of light work under the applicable regulation, Plaintiff must be able to lift up to 20 pounds at a time and frequently lift or carry objects of up to 10 pounds. 20 C.F.R. 404.1567(b). Plaintiff must also be able to walk, stand, and sit with some pushing and pulling of arm or leg controls. *Id.* The ALJ specifically found that:

> [Plaintiff had] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except: the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but he can never climb ladders, ropes, or scaffolds. The claimant can frequently grasp and finger [with] both hands, but he can never use left foot controls. The claimant requires a sit/stand option, every 45-60 minutes at will, without going off task. The claimant must avoid concentrated exposure to hazards and noise.

Tr. 14. Here, there is substantial evidence supporting the ALJ's RFC assessment that Plaintiff could perform light work with limitations noted by the ALJ. *See* 20 C.F.R. § 404.1567.

Plaintiff points to findings from Dr. Rubinshteyn as proof of his more limited capabilities. On February 27, 2015, as part of a workers' compensation independent medical exam, Dr. Rubinshteyn diagnosed Plaintiff with a forearm strain/sprain with a "7 1/2% [schedule loss of use] in regard[] to the right forearm." Tr. 309. But, Dr. Rubinshteyn also noted that Plaintiff, at

the time, was "working at the same job with the same duties." Tr. 308. On June 29, 2015,[16] Dr. Rubinshteyn opined that Plaintiff "had no orthopedic causally related disability and that [Plaintiff] was capable of returning to full duty employment without restrictions." Tr. 313. Dr. Rubinshteyn also diagnosed Plaintiff with left hip arthritis and indicated that Plaintiff needed hip surgery (which he received and from which he recovered). At the time, however, he stated that Plaintiff was capable of returning to full duty employment without restrictions." Tr. 313. None of these records support a different RFC finding.

Plaintiff also relies on Dr. Huish's opinions to support a more limited RFC. As previously discussed, the ALJ had the discretion to assign less than controlling weight to Dr. Huish's opinions and did not err when resolving the conflicting medical evidence. *Matta*, 508 F. App'x at 56. Here, the ALJ considered all of Plaintiff's impairments, the medical evidence on the record, and Plaintiff's testimony. The ALJ did not completely adopt either Dr. Huish's opinions that Plaintiff was totally disabled or Dr. Della Valle's opinion that Plaintiff was only limited to "avoid[ing] climbing stairs and ladders with over 40 pounds." Tr. 376. By not completely adopting either Dr. Huish's or Dr. Della Valle's opinion and considering other evidence in the record, the ALJ calculated an RFC that was consistent with the record as a whole. *Matta*, 508 F. App'x at 56. Notably, the ALJ took into account Plaintiff's testimony about his carpal tunnel syndrome by limiting Plaintiff to only "frequently" grasping and fingering with both hands.

---

[16] The Court notes that there was a typo in Plaintiff's portion of the joint statement which denotes this opinion being from 2017 rather than 2015.

Other evidence in the record also allows the Court to infer that that Plaintiff can do light work. *See Trepanier v. Comm'r of Soc. Sec. Admin.,* 752 F. App'x 75, 78-79 (2d Cir. 2018); *Cichocki v. Astrue*, 729 F.3d, 172, 178 (holding that claimant's reported daily activities supported ALJ's RFC finding). As the ALJ noted, Plaintiff reported that he can take care of his dog, prepare meals, and do light housekeeping. He is able to travel independently, drive every day, and take public transportation. Plaintiff reported in January 2016 that pain in his hip had lessened after his hip surgery. He is still able to use stairs in his home, albeit with the use of a rail. He testified that he was able to go on a cruise. All of this supports the ALJ's RFC finding. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (ALJ can resolve conflicting evidence to arrive at RFC); *Trepanier*, 752 F. App'x at 78-79; *Matta*, 508 F. App'x at 56.

### Medical Vocational Guidelines and Vocational Expert

Plaintiff disputes whether the ALJ properly applied the Grids and properly relied on the vocational expert's testimony. Plaintiff makes no argument as to why or how the ALJ erred and cites to no portion of the record that could support his argument. However, the Court nevertheless addresses both in an overabundance of consideration for Plaintiff.

At the last step of the five-step analysis, the Commissioner has the burden to show that "there is other gainful work in the national economy which the claimant could perform." *Balsamo* 142 F.3d 80. "The ALJ ordinarily meets this burden by utilizing the applicable [Grids], although sole reliance on the [Grids] may be inappropriate where the claimant's exertional impairments are compounded by nonexertional impairments." *Roma v. Astrue*, 468 F. App'x 16, 20 (2d Cir. 2012). Where there are non-exertional limitations that significantly limit

26

possible range of work, the ALJ must employ a VE. *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *cf. Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 769 (S.D.N.Y. 2018) (noting that the mere presence of non-exertional limitations does not foreclose reliance on the grids alone) (citing *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986)). The ALJ can then ask the VE hypotheticals regarding whether there are jobs in the national economy for those with limitations like those of a given claimant. *Morales v. Colvin*, No. 16-CV-08373 (ALC), 2018 WL 1353282, at *9 (S.D.N.Y. Mar. 15, 2018) (citing *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). The ALJ is entitled to rely on a VE's testimony so long as there is substantial evidence supporting the assumptions in the hypotheticals presented to the VE. *Id.*

The ALJ did not address the Grids in her decision. However, application of the Grids, in conjunction with the Plaintiff's RFC, supports the ALJ's finding that Plaintiff is not disabled. On the date of the ALJ's decision, Plaintiff was 50 years old. Under the Grids, Plaintiff would be classified as "[c]loosely approaching advanced age." Plaintiff graduated from high school. His previous work experience as a "[c]onstruction laborer" under the Dictionary of Occupational Titles is categorized as "unskilled." The ALJ found that Plaintiff was capable of light work. Under the Grids, that leads to a finding that Plaintiff is not disabled. However, this is not dispositive because there are non-exertional limitations present.

Here, the ALJ sought out the testimony of a VE. To determine the extent to Plaintiff's non-exertional limitations limited the occupational base, the ALJ posed a series of hypotheticals to the VE based on Plaintiff's age, education, and RFC. In the first hypothetical, the ALJ asked whether there were jobs for someone with substantially similar limitations as Plaintiff, except

that the ALJ did not address hand limitations; did not limit the hypothetical person's ability to only occasionally climb ramps, stairs, ladders, or ropes; did not address the left foot controls limitations; and did not add in the requirement for a sit/stand option. The VE testified that there were jobs available for that hypothetical person, including office cleaner, price marker, and sub assembler of electronics. The ALJ then narrowed the hypothetical to add limitations to never climbing ladders, ropes, or scaffolds and to frequently grasping or fingering. The VE testified that Plaintiff could do the jobs previously provided even with the additional restrictions. The ALJ then narrowed the hypothetical further to a sedentary exertional level and added the additional limitations of never using left foot controls and adding the need for a sit/stand option. Again, the VE testified that there were jobs existing for someone limited to a sedentary exertional level with all the limitations listed in Plaintiff's RFC including addresser or address clerk, cable worker, and touch-up screener. The Court has already found that the ALJ's RFC calculation was proper. As the hypothetical posed was based on that RFC, the ALJ did not improperly rely on the VE's testimony. *See McIntyre*, 758 F.3d at 152.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ properly determined that Plaintiff did not meet a Listing, that the ALJ's RFC determination is supported by substantial evidence, and that the ALJ properly relied on the VE's testimony. Accordingly, Plaintiff's motion is DENIED, and the Commissioner's motion is GRANTED.

**SO ORDERED**,

Dated: February 24, 2020
      New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge